# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1777

_____

United States of America,                *
                                         *
    Plaintiff - Appellee,             *
                                         *  Appeal from the United States
v.                                       *  District Court for the
                                         *  Western District of Missouri.
Christopher Clutter,                     *
                                         *
    Defendant - Appellant.            *

_____

Submitted: January 13, 2012
Filed:   March 26, 2012

_____

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

After entering a conditional plea of guilty to receiving and possessing child pornography in violation of 18 U.S.C. §§ 2252(a)(2), (a)(4), (b)(1), and (b)(2), Christopher Clutter appeals the district court's[1] denial of his motion to suppress, arguing that his father, Joel Clutter, had neither actual nor apparent authority to consent to the seizure of three computers from the family home. We review the

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of United States Magistrate Judge James C. England.

denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials. United States v. Nichols, 574 F.3d 633, 636 (8th Cir. 2009). We conclude based on the totality of the circumstances that the seizure was not constitutionally unreasonable and therefore affirm.

Early on a December morning, Jasper Missouri Police Chief Christopher Creekmore followed fresh tracks in the snow from the site of a commercial burglary to the Clutter residence, learning from employees of a bank along the route that Clutter had asked whether the bank's surveillance camera was operating that morning. Creekmore encountered Clutter on the back porch. He denied involvement in the burglary. After further interviews, on January 8 Clutter admitted committing a series of burglaries and took Creekmore and another officer to the family home, where they explained the situation to Joel Clutter, a former police officer, who gave permission to search the entire residence. Clutter led the officers to his bedroom and showed them stolen tools, computers, and other electronic items. He said he had used the stolen computer equipment to build several computers. He also said he had downloaded business files from the stolen computers and pointed to a large stack of discs next to his computer. Creekmore arrested Clutter and seized the stolen computer equipment, including the stack of discs.

Some days later, Creekmore searched the seized discs to identify burglary victims. When he saw photos he believed to be child pornography, he stopped the search and turned the material over to Detective Tim Williams of the county sheriff's department to commence a child pornography investigation, telling Williams officers had observed three computers at the Clutter residence on January 8 that were not seized. On January 22, with Clutter in custody at the county jail, Williams and Creekmore went to the Clutter residence. They told Joel Clutter they had discovered child pornography and were concerned that three computers in the home might contain more illegal images. Joel Clutter said that he owned the home, invited the

officers in, gave them permission to search, and signed consent forms for three computers. Two were found in common areas of the house and the third in an area controlled by Joel Clutter. He urged the officers to take the computers. They did so and then obtained a warrant to search their contents. Officers executing the warrant found over five hundred images of child pornography. This prosecution followed.

Prior to trial, Clutter moved to suppress (i) incriminating statements made on January 8; (ii) the warrantless seizure of computer equipment on January 8 and the subsequent search of the seized discs; and (iii) the warrantless search of his home and seizure of three computers on January 22. After an evidentiary hearing at which Chief Creekmore and Detective Williams testified, Magistrate Judge England issued a lengthy Report and Recommendation recommending the motion be denied in its entirety. Clutter filed Objections arguing (i) Clutter did not consent to the January 8 seizures and if he did, the subsequent search of the discs exceeded that consent; and (ii) there was no valid consent for the warrantless seizure on January 22 because the government presented no evidence that Joel Clutter "used or had electronic access" to the three computers. District Judge Fenner adopted Magistrate Judge England's recommendations and denied the motion.

On appeal, Clutter argues that the district court erred in upholding the warrantless search and seizure of his computers on January 22. No exception to the Fourth Amendment's warrant requirement applies, he argues, because the government failed to prove that Joel Clutter had actual or apparent authority to consent to the seizure. As Clutter does not appeal the district court's other suppression rulings, it is undisputed for purposes of this appeal that the discs were validly seized on January 8 and that a valid search of the discs before January 22 uncovered evidence of downloaded child pornography.

Clutter's appeal centers on the principle of third party consent, a recognized exception to the Fourth Amendment's warrant requirement. See Nichols, 574 F.3d

at 636. The principle "does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." United States v. Matlock, 415 U.S. 164, 172 n.7 (1974); see Frazier v. Cupp, 394 U.S. 731, 740 (1969) (joint use of duffel bag validated third party's consent to search). Even when a third party lacks actual authority to consent to search or seizure of shared property or premises, the Fourth Amendment is not violated if the officers reasonably relied on the third party's apparent authority to consent, United States v. James, 353 F.3d 606, 615 (8th Cir. 2003), because the Amendment's reasonableness requirement demands of government agents "not that they always be correct, but that they always be reasonable." Illinois v. Rodriguez, 497 U.S. 177, 185 (1990).

Clutter relies primarily on Matlock as applied in James, 353 F.3d at 613-15, where we held that a friend who was asked by the defendant to store computer discs marked "Confidential" had no actual or apparent authority to consent to a warrantless search of their contents. In recent years, whether a third party validly consented to search of a shared computer has been a recurring Fourth Amendment issue, particularly in child pornography prosecutions. It is a sensitive issue because, "[f]or most people, their computers are their most private spaces." United States v. Andrus, 483 F.3d 711, 718 (10th Cir. 2007) (quotation omitted), cert. denied, 552 U.S. 1297 (2008). When determining whether a third party exercised actual or apparent common authority over the contents of a computer, courts typically examine several factors -- whether the consenting third party in fact used the computer, whether it was located in a common area accessible to other occupants of the premises, and -- often most importantly -- whether the defendant's files were password protected. See United States v. Stanley, 653 F.3d 946, 950-51 (9th Cir. 2011); United States v. Stabile, 633 F.3d 219, 232-33 (3d Cir.), cert. denied, 132 S. Ct. 399 (2011); Andrus, 483 F.3d at 719-20; United States v. Buckner, 473 F.3d 551, 554-55 (4th Cir.), cert.

denied, 550 U.S. 913 (2007); United States v. Morgan, 435 F.3d 660, 663-64 (6th Cir. 2006). Clutter argues it was error to deny his motion to suppress because the government presented no evidence "that Joel Clutter used or had electronic access to the computers."

The primary flaw in this argument is that the only Fourth Amendment issue with any factual support is whether the three computers were validly *seized* at the Clutter home on January 22. There is no evidence that the officers *searched* the computers before obtaining an unchallenged warrant authorizing the search. The distinction, though often overlooked, is important:

> Although our Fourth Amendment cases sometimes refer indiscriminately to searches and seizures, there are important differences between the two . . . . The Amendment protects two different interests of the citizen -- the interest in retaining possession of property and the interest in maintaining personal privacy. A seizure threatens the former, a search the latter. As a matter of timing, a seizure is usually preceded by a search, but when a container is involved the converse is often true. Significantly, the two protected interests are not always present to the same extent; for example, the seizure of a locked suitcase does not necessarily compromise the secrecy of its contents, and the search of a stopped vehicle does not necessarily deprive its owner of possession.

Texas v. Brown, 460 U.S. 730, 747-48 (1983) (Stevens, J., concurring), cited in Arizona v. Hicks, 480 U.S. 321, 328 (1987); see generally United States v. Jones, 132 S. Ct. 945, 951 (2012); Soldal v. Cook County, 506 U.S. 56 (1992). In this case, the distinction is significant for three different reasons.

First, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). In this case, Clutter was in jail on January 22. A temporary seizure of the computers while the officers applied for a search warrant

-5-

did not meaningfully interfere with his possessory interests. Joel Clutter, who was in actual possession of the computers in his home, consented to their seizure, indeed, he asked the officers to take them from the home. Viewed from this perspective, no Fourth Amendment "seizure" occurred. See United States v. Place, 462 U.S. 696, 705-06 (1983).

Second, based on their prior valid search of the discs, Chief Creekmore and Detective Williams had probable cause to believe the computers contained evidence of child pornography offenses. "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." Place, 462 U.S. at 701; see Jacobsen, 466 U.S. at 121-22. As the Sixth Circuit said in upholding the warrantless seizure of a suitcase while officers obtained a search warrant, "[t]his was a plain old-fashioned seizure of a person's effects, based on probable cause, in order to prevent the disappearance of evidence and so that a warrant could be obtained and a search conducted." United States v. Respress, 9 F.3d 483, 486 (6th Cir. 1993). Likewise, the Eleventh Circuit held that seizure of a computer "to ensure that the hard drive was not tampered with before a warrant was obtained" did not violate the Fourth Amendment in United States v. Mitchell, 565 F.3d 1347, 1350 (11th Cir. 2009); accord United States v. Walser, 275 F.3d 981, 985-86 (10th Cir. 2001), cert. denied, 535 U.S. 1069 (2002).

Third, the officers' limited purpose in temporarily seizing the computers -- to avoid the destruction of evidence while they applied for a search warrant -- is relevant to the validity of Joel Clutter's third party consent. The officers knew that the computers were located in areas of the home accessible to Joel Clutter, a former police officer who knew why they wanted to seize the computers, signed consent forms, and urged the officers to take the computers with them. As in Stabile, 633

F.3d at 232-33, and in <u>Nichols</u>, 574 F.3d at 636-37, the officers reasonably relied on Joel Clutter's actual or apparent authority to consent to a temporary seizure, without inquiring as to whether he "used or had electronic access to the computers."

For these reasons, we conclude that the totality of the circumstances plainly support the district court's determination that seizure of the three computers on January 22 was not constitutionally unreasonable, based on Joel Clutter's consent, the officers' probable cause to believe the computers contained evidence of child pornography offenses, and their intent to obtain a search warrant.

The judgment of the district court is affirmed.

_____